## I. A. BRIGGS v. STATE.

No. A-5413. Opinion Filed June 5. 1926.
(246 Pac. 655.)

John P. Hickman, L. G. Lewis, and Baxter Taylor, for plaintiff in error.

The Attorney General and Fred Hansen, Asst. Atty. Gen., for the State.

BESSEY, P. J. I. A. Briggs, plaintiff in error, defendant in the trial court, was tried and convicted of the charge of having possession of more than 32 grains of a certain

narcotic drug, being 86 grains of morphine sulphate. He was sentenced to pay a fine of $500 and the costs of the prosecution.

The penal provisions of our narcotic drug statute (section 8887, Comp. Stat. 1921), under which this prosecution was brought, are exceedingly complex, with several exceptions and provisos, making it difficult under some circumstances to ascertain whether the spirit and letter of the law have been violated. This would appear to be one of such cases.

The defendant had been for many years a reputable practicing physician of the old school, a graduate of an accredited school of medicine. For a time he was superintendent of an institution for the relief of indigent and insane persons, with wide experience in the administering and use of narcotic drugs. Incident to his private practice he purchased and kept on hand a stock of medicine for use in treating his own patients, rarely writing prescriptions to be filled by commercial apothecaries. The morphine found in his possession, upon which this charge was based, was procured upon two separate requisitions made on special narcotic blanks, in the form prescribed by law and the regulations touching the sale and distribution of narcotic drugs. The amount named in one of these requisitions was in excess of the amount named in the statute. This the defendant explained by showing that he had made two requisitions, the first of which had not been filled, and the second being made to cover both. The evidence is voluminous, replete with details, much of which need not be here repeated.

This conviction rests largely upon the testimony of J. W. Stafford, himself an habitual user of narcotics, working under the direction of United States Narcotic Inspectors, as provided by the Harrison Act, for the purpose of entrapping and decoying narcotic peddlers. Stafford went to the office of the defendant in Stillwater, at about 9 o'clock

a. m., and represented to the defendant that he was representing the Oklahoma Farmer-Stockman and that he and his wife were on their way to the eastern part of the state. He told the doctor that his wife had been operated on eight times in seven years and that her condition was then such that another operation would have to be performed; that she was suffering great pain and wanted morphine to relieve her. The doctor told the witness to bring her up to his office so that he could examine her and observe her condition. The witness said she was so crippled that she could not come to the office. After further inquiry the doctor gave Stafford two quarter grain tablets of morphine. At about 2 o'clock Stafford returned for more morphine. The defendant took from his medicine case two more tablets and gave them to the witness, who gave the defendant a dollar bill in payment therefor. Two deputy sheriffs then entered and after searching the defendant's person and his medical supplies found about 80 grains of morphine. They also recovered the marked dollar bill left there by Stafford, as well as copies of the requisition papers required to procure the morphine.

There is no evidence indicating that this doctor was an habitual offender, or had ever before been accused of violating the narcotic act. The law condemns only the illegitimate use and distribution of narcotic drugs. The law recognizes the right of physicians to use narcotic drugs within established professional bounds in treating narcotic addicts, in cases of surgical operations, and to relieve pain. We think that the evidence in this case, considered as a whole, indicates that the defendant intended to keep within these bounds as a physician and retail vendor of drugs.

We do not hold that an illegal intent is an essential ingredient of the offense, but do hold that an innocent intent may be considered along with all the other attendant circumstances, including the fact that the possession of an

excessive amount of the drug may have come about inadvertently, through mistake, and that there does not appear in this case to have been any real violation of the purpose and object of our narcotic drug act.

This court has no inclination to condone the vending or transporting of dope into channels where it will corrupt young people and others too weak to resist its soothing influences. The prohibition against the possession of an excessive amount is intended to discourage and prevent such distribution. Believing, however, that the transaction here shown did not bring it within the purpose of the act, the conviction is reversed, and the cause remanded.

DOYLE and EDWARDS, JJ., concur.